IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RYAN SJ PRICE,<br><br>        Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | CV 16-123-M-JCL<br><br>ORDER |

Plaintiff Ryan Price brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, §§ 1381-1383(c). Price alleges disability since September 1, 2000, due to a schizoaffective disorder and other mental impairments. After Price's applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge (ALJ). On June 2, 2015, the ALJ issued a decision finding Price not disabled within the meaning of the Act. The Appeals Council

denied Price's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Price was 32 years old at the time of his alleged onset date, and 48 years old at the time of the ALJ's decision.

I.      **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the

Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.     Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the

impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

**III. Discussion**

The ALJ found at step one that Price met the insured status requirements of the Act through September 30, 2000. The ALJ further found that Price had engaged in substantial gainful activity during the first quarter of 2013, but not for 12 consecutive months before or after. (Doc. 15-2, at 20). At step two, the ALJ found that Price had the following severe impairments: schizoaffective disorder, depression, and personality disorder. (Doc. 15-2, at 20. ). The ALJ concluded at step three that Price did not have an impairment or combination of impairments

that met or medically equaled any impairment described in the Listing of Impairments. (Doc. 15-2, at 21). The ALJ found that Price's subjective testimony was not entirely credible, and determined that he had the residual functional capacity to perform a full range of work at all exertional levels, but with several nonexertional limitations. (Doc. 15-2, at 22). Based on that residual functional capacity assessment, the ALJ found at step four that Price could perform past relevant work as a stocker. (Doc. 15-2, at 31). The ALJ made alternative findings at step five, concluding that Price was also capable of working as a commercial cleaner, laundry worker, or document preparer. (Doc. 15-2, at 32).

### A. Credibility

Price argues the ALJ did not provide sufficiently clear and convincing reasons for finding his subjective testimony only partially believable.

If the ALJ finds "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [those] symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). Price met this initial burden because he provided evidence that he has

underlying mental impairments that could reasonably be expected to produce some symptoms, and the ALJ did not find that he was malingering.

Price testified he has been hearing voices in his head since 1992. (Doc. 15-5, at 168). He said that he hears voices daily, and that the voices interfere with his daily activities. (Doc. 15-5, at 170). Price explained that he was discharged from a job with Home Depot in 2013 because he was watching too much YouTube at the direction of the voices in his head. (Doc. 15-5, at 167). Price reported that his daily activities include going to the library, using the computer, reading, job hunting, and household chores like vacuuming and washing dishes. (Doc. 15-3, at 46, 48). He indicated that the voices make it difficult for him to concentrate, accomplish daily activities, and write or speak coherently. (Doc. 15-3, at 110-126).

The ALJ considered Price's testimony but found him only partially credible for several reasons. To begin with, although the ALJ did not affirmatively find that Price was malingering, she noted there were reports from treating sources who questioned whether he was exaggerating his symptoms or engaging in drug seeking behavior. (15-2, at 28). In a psychological evaluation from February 2006, for example, a psychologist wrote that Price was "anxious to please, offering exaggerations of symptoms he thinks we may be looking for." (Doc. 15-4, at 63).

During a September 2012 psychiatric assessment, Price explained he had previously been accused of malingering and drug seeking, and in January 2013 an examining nurse practitioner observed that "a workup from the Montana State Hospital had debated whether or not he was malingering in symptoms." (Doc. 15-4, at 68, 74). The ALJ reasonably questioned Price's credibility in part because he had a history of possible malingering.

The ALJ next found that certain discrepancies between Price's statements as to the severity of his auditory hallucinations and the observations of his mental health care providers undermined his credibility. In particular, the ALJ noted that while Price complained of having frequent invasive auditory hallucinations, during mental status examinations he had not been observed responding to any internal stimuli. (Doc. 15-2, at 28). In March and April 2014, for example, Price reported having chronic auditory hallucinations but during his examinations he did not appear to be responding to any internal stimuli. (Doc. 15-2, at 25; 15-4, at 108; 15-5, at 20). The ALJ permissibly found Price's statements as to the severity and frequency of his auditory hallucinations less than entirely credible in part based on the fact that his mental health care providers did not observe him responding to internal stimuli.

The ALJ further found that when Price was compliant with his prescribed

medication, his symptoms responded well to treatment. (Doc. 15-2, at 28). The ALJ recognized that Price had been admitted for psychiatric treatment several times, but found it significant that he consistently "stabilized remarkably quickly," particularly given his allegations as to the severity of his symptoms on admission. (Doc. 15-2, at 28). By way of example, the ALJ discussed the fact that Price presented to the emergency room in March 2014, stating that he was psychotic, having auditory hallucinations, and needed help for his serious mental illness. Price did well after he was admitted, and did not show any mood or psychotic symptoms. He was discharged three days later after it was determined that he did not need ongoing inpatient psychiatric hospitalization. (Doc. 15-5, at 58-59). The record further reflects that Price's symptoms improved on medication, but that he was not always compliant.. (Doc. 15-5, at 34). The ALJ reasonably found that Price's statements regarding the severity of his psychiatric symptoms were not entirely credible in part because the record showed his symptoms improved with treatment, and was not always compliant with his medication. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 25, 638 (9th Cir. 2007).

Finally, the ALJ found the fact that Price's activities were not entirely consistent with his allegations of disabling symptoms. The ALJ pointed out that

Price engaged in a full range of daily activities and volunteered a local theater in a somewhat public capacity, which suggested a higher level of functioning that he claimed. These were sufficiently clear and convincing reasons for finding Price's subjective testimony only partially believable.

B.  **Medical Expert Testimony**

Clinical psychologist Dr. Monty Kuka testified as a medical expert at the administrative hearing. He stated that Price "often has difficulties with his paranoid ideas and distractability due to voices," and recommended that Price not work with the public and work "in a relatively isolated environment that does not have a lot of activity or distractions." (Doc. 15-5, at 87). Price argues the ALJ erred by failing to incorporate the limitations identified by Dr. Kuka into the residual functional capacity assessment and corresponding hypothetical to the vocational expert.

"The ALJ is responsible for translating the claimant's medical conditions into functional limitations" in the residual functional capacity assessment, which "is sufficient if it is 'consistent with restrictions identified in the medical testimony.'" *Chapman ex rel. Sanders v. Commissioner Social Sec. Admin.*, 2014 WL 4102242 *7 (D. Ore. Aug. 18, 2014) (quoting *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).

Contrary to Price's argument, the ALJ adequately accounted for Dr. Kuka's testimony. The ALJ expressly considered Dr. Kuka's testimony and stated that she was giving it great weight. (Doc. 15-2, at 30). In the residual functional capacity assessment, the ALJ limited Price to unskilled work, and "to jobs that require no more than occasional interaction with supervisors and coworkers, but no work in tandem with supervisors and co-workers." (Doc. 15-2, at 22). She further specified that Price could have no interaction with the public, could tolerate only occasional changes in the routine work setting, was limited to no more than occasional decision making and judgments required for unskilled work, and could not work at a fixed production rate but would be able to do goal oriented work. (Doc. 15-2, at 22-23). The ALJ reasonably interpreted Dr. Kuka's testimony and translated it into the nonexertional limitations set forth above, and her assessment of the evidence is entitled to deference.

## C. Listed Impairments

Price argues the ALJ erred at step three by finding that he did not satisfy the criteria for presumptive disability under Listing 12.03 for schizophrenia, paranoid, and other psychotic disorders, Listing 12.04 for affective disorders, or Listing 12.08 for personality and impulse control disorders. At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's

impairment, or combination of impairments, meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).

To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). The Ninth Circuit has made clear that the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that his impairments meet or medically equal all of the criteria of a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Listing 12.03, 12.04, and 12.08 require that a claimant's impairments satisfy at least two of the following B criteria: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of

decompensation each of extended duration. 20 C.F.R. pt. 404, subpt. P, Appendix 1, §§ 12.03, 12.04, 12.08. Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning." *Id.* at 12.00(C)(4). The term "repeated episodes of decompensation, each of extended duration," means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *Id.*

The ALJ considered each of these three listings, but found that Price satisfied only one of the B criteria. She found that Price had marked difficulties in social functioning, but that his mental impairments caused no restrictions in activities of daily living and only moderate difficulties with regard to concentration, persistence or pace. (Doc. 15-2, at 21). The ALJ further found that Price had experienced one to two episodes of decompensation, each of extended duration. (Doc. 15-2, at 21).

Price does not challenge the ALJ's first three findings, and instead focuses exclusively on the fourth. He argues the ALJ's finding that he had experienced only one or two episodes of decompensation of extended duration is not consistent with Dr. Kuka's testimony. According to Price, Dr. Kuka testified that Price's several brief hospitalizations could be considered episodes of decompensation of extended duration because "for most people the period of time leading up to

hospitalization involves at least a week or two" so he "give[s] a little leeway on that." (Doc. 15-5, at 186). Price maintains that "if a week or two leeway was added "to each of his brief hospitalizations, he would satisfy the B criteria. (Doc. 16, at 32).

But Dr. Kuka clearly testified that in his opinion, Price had experienced only one period of decompensation of extended duration. Dr. Kuka agreed that "we can count the nine-day hospitalization as an episode of decompensation," but Price's "other hospitalizations that tend to be three or four days in length" do not qualify "so I would just call that one." (Doc. 15-5, at 185-86). Giving Price the benefit of the doubt, the ALJ found based on Dr. Kuka's testimony and the evidence of record that Price had experienced "one to two" episodes of decompensation of extended duration. (Doc. 15-2, at 21). The ALJ did not misconstrue Dr. Kuka's testimony, and her finding that Price had not experienced three or more episodes of decompensation of extended duration within one year was supported by substantial evidence.

Listings 12.03 and 12.04 also have alternative paragraph C criteria. A claimant may satisfy the C criteria by demonstrating a medically documented history of the applicable mental disorder (at least two years in duration) that has more than minimally limited the claimant's ability to do basic work activities and

one of the following (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that results in decompensation with even a minimal increase in mental demands or change in the environment; or (3) current history of at least one year of inability to function outside a highly supportive living arrangement.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.03 & 12.04.

With the exception of his argument that the ALJ erred by finding he had not experienced repeated episodes of decompensation, Price does not claim to meet any of the C criteria, and Dr. Kuka testified that he "did not see that the C criteria would apply in this case." (Doc. 15-5, at 186).  As discussed above, the ALJ's finding that Price had not experience repeated episodes of decompensation lasting for an extended period is supported by substantial evidence.  Price does not point to evidence demonstrating that any of the remaining C criteria are satisfied here.

The Court thus concludes that the ALJ's step-three analysis is supported by substantial evidence and free of error.

## IV. Conclusion

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 5th day of June, 2017

_____
Jeremiah C. Lynch
United States Magistrate Judge